## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| BILLY ANDERSON, B54312 | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 18 CV 7211 |
| | ) | |
| JACQUELINE LASHBROOK, | ) | Judge Thomas M. Durkin |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Billy Anderson, a state prisoner serving two consecutive 30-year sentences for two counts of attempted first-degree murder, seeks a *pro se* writ of habeas corpus pursuant to 28 U.S.C. § 2254. R. 1. Respondent argues that Anderson's claims are procedurally defaulted and/or fail on the merits. R. 7. For the following reasons, Anderson's petition is denied in its entirety, and the Court declines to issue a certificate of appealability.

### Background

***Trial.*** Alphonso Hall testified that on September 21, 2009, he was with his brother Barron Hall at Barron's apartment building and had been smoking marijuana. The brothers were outside Barron's building when a group of men approached around 9 p.m. regarding their problem with Barron's drug sales in the area. *People v. Anderson*, 2014 WL 2795920, at *1 (Ill. App. Ct. June 17, 2014) ("Anderson I"). Barron walked away to talk with one of the men, and Alphonso—

although he could not hear the conversation—discerned that they "didn't see eye-to-eye." *Id.*

Barron and Alphonso then went to a nearby liquor store. *Id.* They returned to Barron's apartment building, and were sitting outside when a group of 9 or 10 men congregated across the street. *Id.* Alphonso went inside to call 911 because he feared some men were armed. Barron remained outside, and the men dispersed before the police arrived. *Id.* Once the police left, Alphonso went back outside and began arguing with a man looking out the window of an upstairs apartment. *Id.* Alphonso taunted the man, telling him to shoot because the man "referred to himself as 'the shooter.'" *Id.* The man then used a phone to "call[ ] some guys back," and shortly thereafter, Anderson and his codefendant Reginald Owens approached the Halls and began shooting at them. *Id.* at *2. Alphonso witnessed Barron being shot and suffered multiple gunshot wounds himself, one of which rendered Barron paraplegic. *Id.* at *1-2. Although Alphonso could not identify who shot him during an interview with police that night, he identified Owens as one of the shooters in two photographic arrays the next day. *Id.* at *2. Alphonso also identified Anderson and Owens as the shooters in photo lineups the next month, and again during Anderson's trial. *Id.*; R. 8, Ex. M at CC-59-60.

Vivian Pettigrew testified that she lived across the street from Barron's apartment building at the time of the shooting, and awoke at 10 p.m. that night to a man repeatedly yelling "shoot." *Anderson I*, 2014 WL 2795920, at *2. Pettigrew looked out her window and saw Barron and Alphonso Hall in front of Barron's apartment

2

building; Alphonso repeated "shoot" as he looked up at an apartment on the third floor. *Id.* Pettigrew then saw Anderson and Owens crouched in an alley holding guns. She recognized them from the neighborhood. *Id.* Pettigrew watched Anderson and Owens approach the Halls and begin shooting at them. *Id.* Although Pettigrew did not contact the police that evening, she went to the police station the next day and identified Owens as one of the shooters in a photographic array. *Id.* at *3. Pettigrew returned home from the police station, and subsequently contacted the police after seeing Anderson and Owens on her street with their friends. *Id.* She also identified Anderson and Owens as the shooters in photo lineups the next month, and again at Anderson's trial. *Id.*; R. 8, Ex. M at CC-161.

At the conclusion of his December 2011 bench trial, Anderson was convicted of two counts of attempted first-degree murder, and was sentenced to serve two consecutive 30-year prison terms.[1] *Anderson I*, 2014 WL 2795920, at *1. Anderson filed a *pro se* motion for a new trial arguing in part that trial counsel was ineffective for failing to present an alibi defense, which the trial court denied. *People v. Anderson*, 2018 WL 1476030, at *3 (Ill. App. Ct. Mar. 23, 2018) ("Anderson II").

***Direct Appeal.*** On direct appeal, the Illinois appellate court rejected Anderson's sufficiency of the evidence claim. R. 8, Ex. B; *Anderson I*, 2014 WL 2795920. The Illinois Supreme Court denied Anderson's petition for leave to appeal

---

[1] In a separate trial, Owens was also found guilty of two counts of attempted first-degree murder and sentenced to serve two consecutive 30-year prison terms. *People v. Owens*, 2014 WL 2535236, at *1 (Ill. App. Ct. June 2, 2014).

(PLA) on September 24, 2014. *People v. Anderson*, 20 N.E.3d 1256 (Table) (Ill. 2014). On February 23, 2015, the United States Supreme Court denied Anderson's petition for writ of certiorari. *Anderson v. Illinois*, 135 S. Ct. 1428 (Mem.) (2015).

***State Post-Conviction Proceedings.*** On August 24, 2015, after his unsuccessful direct appeal, Anderson filed a *pro se* post-conviction petition under the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-1 *et seq.*, claiming in relevant part that he was denied his right to effective assistance of counsel because trial counsel failed to call Anderson's girlfriend, Brandi Wheeler, and her mother, Patricia Wheeler, as alibi witnesses.[2] R. 8, Ex. F. The Illinois circuit court dismissed the petition on September 29, 2015, concluding that Anderson's claim was procedurally barred because it could have been but wasn't raised on direct appeal. *Id.*, Ex. G at 3. The court turned to the merits in any case, ultimately concluding that the issues Anderson raised were "frivolous and patently without merit." *Id.* at 10. On March 23, 2018, the Illinois appellate court affirmed the judgment of the circuit court. *See generally Anderson II*, 2018 WL 1476030. The Illinois Supreme Court subsequently denied Anderson's PLA. *People v. Anderson*, 108 N.E.3d 834 (Table) (Ill. 2018). That denial was the final procedural step before Anderson filed this habeas petition.

---

[2] Anderson also argued that he was actually innocent, that he was unreasonably arrested and seized in violation of the Fourth and Fourteenth Amendments, and that trial counsel was ineffective for his lack of communication and failure to interview Pettigrew and other witnesses before his trial. *See* R. 8, Ex. F; *see also Anderson II*, 2018 WL 1476030, at *3. Anderson did not raise these claims in any subsequent state court filing, and nor did he raise them in his habeas petition. *See generally* R. 8, Ex. I (Anderson's appeal from the circuit court's order summarily dismissing his post-conviction petition); *see also id.*, Ex. L (Anderson's PLA from the appellate court decision affirming denial of post-conviction relief); R. 1.

***Federal Post-Conviction Proceedings.*** On October 29, 2018, Anderson filed

his Section 2254 petition, raising three principal claims: (1) trial counsel provided

ineffective assistance by failing to impeach eyewitnesses Alphonso Hall and Vivian

Pettigrew; (2) trial counsel provided ineffective assistance by failing to call Brandi

and Patricia Wheeler as alibi witnesses; and (3) appellate counsel provided ineffective

assistance by failing to raise claim (2) in the direct appeal of Anderson's conviction.

R. 1 at 5-10. Anderson's petition also states in conclusory fashion in claim (1) that

there was insufficient evidence to convict him. *Id.* at 7. Respondent argues that

Anderson's petition should be denied in its entirety because Anderson's claims are

either defaulted and/or lack merit. *See generally* R. 7. Anderson did not file a brief in

reply. Although the Court may properly consider Anderson to have waived the

arguments to which he has not responded, *see Bonte v. U.S. Bank, N.A.*, 624 F.3d 461,

466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver"),

because Anderson is proceeding *pro se*, the Court nevertheless addresses each claim

below.

## Standard

"Federal habeas relief from a state-court criminal judgment is not easy to come

by." *Thompkins v. Pfister*, 698 F.3d 976, 983 (7th Cir. 2012). When a state court has

adjudicated a federal claim on the merits, a federal habeas court may not grant relief

unless the state court's decision "was contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court

of the United States," or was based on "an unreasonable determination of the facts in

light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). To prevail under this standard, the "prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Ward v. Neal*, 835 F.3d 698, 703 (7th Cir. 2016). However, "[e]ven in the context of federal habeas, deference does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief." *A.M. v. Butler*, 360 F.3d 787, 801 (7th Cir. 2004) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

## Analysis

### I.    Anderson's Principal Claims

Respondent argues that each of Anderson's three principal claims is procedurally defaulted. A state prisoner seeking federal habeas relief can procedurally default a federal claim in two ways. *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016). The first is through a failure to exhaust remedies in state court. *Id.* The second is through a failure to meet a state procedural requirement. *Id.* Both are present here. The Court first addresses claims (1) and (3), which are procedurally defaulted for Anderson's failure to exhaust state court remedies. The Court then turns to claim (2), which is both defaulted for Anderson's failure to meet an Illinois state procedural requirement, and also fails on its merits.

## A.    Claims (1) and (3) are procedurally defaulted for failure to exhaust remedies in state court

Respondent argues that claim (1)—that trial counsel was ineffective for failing to impeach witnesses Alphonso Hall and Vivian Pettigrew—and claim (3)—that appellate counsel was ineffective for failing to raise his alibi claim on direct appeal— are procedurally defaulted because Anderson did not advance those claims through one full round of state appellate review. R. 7 at 4-5. As noted, Anderson did not file a reply brief and thus did not respond to Respondent's arguments.

A claim raised in a Section 2254 petition is procedurally defaulted if the petitioner failed to include his claim in a petition for leave to appeal to the Illinois Supreme Court. *See Hicks v. Hepp*, 871 F.3d 513, 530 (7th Cir. 2017) (advancing a claim through one full round of state appellate review includes "presenting the claims to the state's highest court in a petition for discretionary review"); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("state prisoners must give the state courts one full opportunity to resolve any constitutional issues" before federal courts address those issues).

While Anderson exhausted his sufficiency of the evidence claim through direct appeal, and exhausted his claim that trial counsel was ineffective for failing to call Brandi and Patricia Wheeler as alibi witnesses through post-conviction proceedings, he exhausted neither claim (1) nor claim (3). To the contrary, the record reflects that Anderson had not raised either claim prior to filing his Section 2254 petition. Accordingly, both are defaulted.

**B.    Claim (2) is procedurally defaulted for failure to meet a state procedural requirement, and also fails on the merits**

***Procedural Default.*** Respondent argues that claim (2)—that trial counsel was ineffective for failing to call Brandi and Patricia Wheeler as alibi witnesses—is also procedurally defaulted because the Illinois appellate court rejected it on the independent and adequate state law ground that Anderson failed to raise it on direct appeal. R. 7 at 5. Again, Anderson offers no argument in response.

A habeas claim "will be procedurally defaulted—and barred from federal review—if the last state court that rendered judgment 'clearly and expressly' states that its judgment rests on a state procedural bar." *Lee v. Foster*, 750 F.3d 687, 693 (7th Cir. 2014) (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)); *see also Engle v. Isaac*, 456 U.S. 107, 129 (1982) (federal courts should avoid "undercutting the State's ability to enforce its procedural rules"). "Accordingly, [courts do] not entertain questions of federal law in a habeas petition when the state procedural ground relied upon in the state court is [1] independent of the federal question and [2] adequate to support the judgment." *Lee*, 750 F.3d at 693 (citing *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). "An independent state ground will be found when the court actually relied on the procedural bar as an independent basis for its disposition of the case." *Lee*, 750 F.3d at 693; *Thompson*, 501 U.S. at 730-31 (in such a case, the state-court judgment "rests on independent and adequate state procedural grounds" immune from federal court review). This bar is necessary, because otherwise "habeas would offer state prisoners . . . an end run around the limits of [the Supreme] Court's

jurisdiction and a means to undermine the State's interest in enforcing its laws." *Thompson*, 501 U.S. at 730-31.

Here, the Illinois appellate court expressly held that Anderson did not meet a state procedural requirement for his claim that trial counsel was ineffective by failing to call Brandi and Patricia Wheeler as alibi witnesses; namely, this claim could have been raised on direct appeal but was raised only in his petition for post-conviction relief. *Anderson II*, 2018 WL 1476030, at *4 ("[W]e find [Anderson's] claim of counsel's ineffectiveness to be forfeited as this argument could have been raised on direct appeal"). Accordingly, is claim is procedurally defaulted. *See United States ex rel. Williams v. DeTella*, 1999 WL 782026, at *2 (N.D. Ill. Sept. 24, 1999) ("Under Illinois law, '[f]ailure to raise a claim which could have been addressed on direct appeal is a procedural default which results in a bar to consideration of the claim's merits in a post-conviction proceeding.'" (quoting *People v. Erickson,* 641 N.E.2d 455, 458 (Ill. 1994), *cert. denied,* 514 U.S. 1107 (1995))).

***Merits.*** Notwithstanding their conclusions that Anderson defaulted claim (2), both the circuit court and the Illinois appellate court went on to address and reject the claim on its merits. *See Anderson II*, 2018 WL 1476030, at *4-5. Respondent contends that the appellate court correctly identified and reasonably applied the governing Supreme Court standard to reach this result. R. 7 at 7. As with Respondent's other arguments, Anderson failed to respond.

The two-part standard articulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984) governs claims for ineffective assistance of counsel.

To succeed on such a claim, a petitioner must show that his lawyer's representation (1) "fell below an objective standard of reasonableness" (performance prong); and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (prejudice prong). *Strickland*, 466 U.S. at 688, 694. The *Strickland* analysis begins with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. Because the *Strickland* standard is "highly deferential" to a lawyer's strategic choices and the review of state-court judgments under § 2254(d) is "likewise highly deferential," the Court's review here is "doubly deferential." *Hinesley v. Knight*, 837 F.3d 721, 732 (7th Cir. 2016).

The Illinois appellate court reasonably determined that Anderson failed to satisfy *Strickland*'s two-part test. Focusing on the "performance" prong, the court noted that trial counsel went to the crime scene "several times" and spoke to Anderson's family members and to Brandi Wheeler, whom trial counsel claimed never offered an alibi. *Anderson II*, 2018 WL 1476030, at *5. And although at the hearing on his motion for a new trial Anderson testified that he spoke with trial counsel about an alibi defense and gave counsel the names and numbers of his alibi witnesses, trial counsel testified that he had no conversations with Anderson about an alibi defense. *Id.* at *4-6. The trial court found trial counsel credible, and the appellate court agreed, concluding that trial counsel instead reasonably and "effectively cross-examined Pettigrew in an attempt to discredit her observations." *Id.* at *5-6. In light of Pettigrew's status as "the State's primary eyewitness" and counsel's right to make

10

strategic choices without fear of subjecting himself to an ineffective assistance claim, the appellate court determined that counsel's representation did not fall below the objective standard of reasonableness set forth in *Strickland*. *Id.* at *6; *see United States v. Olson*, 846 F.2d 1103, 1109 (7th Cir. 1988) (noting that the decision not to present an alibi defense is "precisely the kind of strategic choice, made by a competent, experienced and well-trained lawyer that a court should not second-guess"). The Court agrees. Given Anderson's failure to establish *Strickland*'s performance prong, the Court need not examine the prejudice prong. *See Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one."). Therefore, the appellate court properly rejected Anderson's claim, and this Court does too.[3]

### C.    The Court cannot excuse Anderson's procedural defaults

A court can nevertheless address the merits of a procedurally defaulted habeas claim if the petitioner can demonstrate his actual innocence, show cause for the default and actual prejudice resulting from the alleged violation of federal law, or otherwise demonstrate that not considering the claim would work a "fundamental miscarriage of justice." *See Woods v. Schwartz*, 589 F.3d 368, 377 (7th Cir. 2009) (procedural default can be excused by demonstrating actual innocence); *see also*

---

[3] It follows that Anderson's appellate counsel was not ineffective for failing to raise the alibi issue on direct appeal (claim (3)). *See Johnson v. Thurmer*, 624 F.3d 786, 793 (7th Cir. 2010) ("Because [petitioner's] appellate counsel claim is predicated on trial counsel's errors, the two claims rise and fall together."). Accordingly, even if that claim were not defaulted, it too would fail.

*Thompson*, 501 U.S. at 750 (procedural default of a federal habeas claim may be excused if petitioner can show cause and prejudice or demonstrate a fundamental miscarriage of justice). To demonstrate actual innocence, Anderson must present new and reliable evidence to rebut the "strong—and in the vast majority of the cases conclusive—presumption of guilt." *See Woods*, 589 F.3d at 377 (quoting *Schlup v. Delo*, 513 U.S. 298, 326, n.42 (1995)). To demonstrate cause and actual prejudice or a fundamental miscarriage of justice, a petitioner must, at a minimum, explicitly argue either issue. *See Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008) (declining to consider defaulted habeas claim because petitioner "fails to argue either [cause and prejudice or fundamental miscarriage of justice] point").

Nothing in Anderson's petition could be construed as an attempt to show either cause for, or actual prejudice because of, the defaults, nor has Anderson demonstrated a fundamental miscarriage of justice. *See generally* R. 1. To the contrary, he failed to offer any argument in response to the default arguments. And to the extent that Anderson's petition could be construed as an attempt to demonstrate actual innocence, it again falls short; Anderson failed to present any new—let alone reliable—evidence to rebut the presumption set forth in *Schlup*. Thus, the Court cannot excuse Anderson's defaults.

## II.    Sufficiency of the Evidence

As noted, Claim (1) primarily concerns Anderson's (procedurally defaulted) contention that trial counsel was ineffective for failing to impeach eyewitnesses Alphonso Hall and Vivian Pettigrew. R. 1 at 5-7. But Anderson also contends in a

single conclusory sentence that there was insufficient evidence to sustain his conviction. *See id.* at 7 (stating that the eyewitness identifications and "lack of physical evidence" meant that the evidence "was not sufficient to prove petitioner Anderson's guilt beyond a reasonable doubt"). Respondent argues that even assuming Anderson intended to raise this sufficiency of the evidence issue as a separate claim for this Court's review, it is meritless, because the state court correctly identified and reasonably applied the relevant federal standard, and its conclusion was not objectively unreasonable. R. 7 at 5-7. The Court cannot discern from Anderson's petition whether he intended to raise this as an independent claim. However, because Anderson is *pro se* and any such claim was not defaulted, the Court will address its merits.[4]

Sufficiency of the evidence claims "face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012). First, a reviewing court cannot set aside a jury's—or in a bench trial, a judge's—determination regarding the sufficiency of the evidence on direct appeal unless "no rational trier of fact could have agreed" with the jury or judge (as applicable). *Id.* (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)). Second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court

---

[4] As discussed *supra*, Anderson exhausted this insufficiency of evidence claim prior to filing his Section 2254 petition by appealing it directly, and then filing a PLA to the Illinois Supreme Court. Accordingly, the Court may consider its merits, assuming he intended to raise it here.

disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.* (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)).

Anderson's sufficiency of the evidence claim falls short of this threshold. On direct appeal, Anderson contended that the court should vacate his convictions because Vivian Pettigrew's description of the shooting was vague, there were discrepancies between her and Alphonso Hall's accounts of the shooting, there was a lack of evidence to corroborate her and Alphonso's identifications, and it was implausible that Anderson would return to the scene of the shooting one day after it occurred as Pettigrew testified. R. 8, Ex. B at 16-20.

In addressing these arguments, the Illinois appellate court noted that it must "tak[e] the evidence in the light most favorable to the prosecution" and determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," a standard of review in line with that in *Johnson*. *Anderson I*, 2014 WL 2795920, at *4; *Johnson*, 566 U.S. at 651 (on direct appeal, judgment cannot be disturbed unless "no rational trier of fact could have agreed" with the result).

The appellate court went on to correctly apply that standard, determining that it could not conclude that no reasonable trier of fact could convict Anderson of the attempted first-degree murders of Barron and Alphonso Hall. *Anderson I*, 2014 WL 2795920, at *5. In so concluding, the court discussed the five factors used to assess

an identification's reliability,[5] noting that even a single eyewitness identification can be sufficient to sustain a conviction, and in this case, Vivian Pettigrew's and Alphonso Hall's "repeated" and "certain" identifications sufficed. *Id.* (citing *People v. Tomei*, 986 N.E.2d 158, 164 (Ill. App. Ct. 2013)); *see also People v. Johnson*, 499 N.E.2d 1355, 1363 (Ill. 1986) (in Illinois "identification of the accused by a single eyewitness is sufficient to sustain a conviction, provided that the witness viewed the accused under circumstances permitting a positive identification"). The appellate court then addressed the discrepancies between Pettigrew's and Hall's accounts, noting the witnesses' differing vantage points and the lack of legal importance in determining which shooter fired first or matching shooters to victims because the shooters acted in concert (points on which the eyewitnesses disagreed). *Anderson I*, 2014 WL 2795920, at *5. The court found that the discrepancies fell within the "proverbial margin of error" given how quickly the shooting started and stopped. *Id.* Further, the court rejected Anderson's argument based on Pettigrew's alleged lack of specificity, concluding that her testimony was not rendered incredible because she could not "give specific numbers on how close she was to the shooter or they were to the Halls, nor for how long she saw the shooters." *Id.*

Finally, the court also appropriately rejected Anderson's argument that it was implausible that the shooter would return to the scene one day later, as Pettigrew

---

[5] Those factors are: (1) the witness's opportunity to view the suspect during the offense; (2) the witness's degree of attention; (3) the accuracy of any prior descriptions provided; (4) the witness's level of certainty at the time of the identification procedure; and (5) the length of time between the crime and the identification. *Tomei*, 986 N.E.2d at 164.

contended that Anderson had, noting that Anderson lived in the area, and concluding that "human experience is broad and includes the performance of acts that . . . seem imprudent or even irrational." *Id.* at *5.

The appellate court's determination that a rational trier of fact could have agreed with the conviction was not "objectively unreasonable." *Johnson*, 566 U.S. at 651 (quoting *Renico*, 559 U.S. at 773). Accordingly, the Court rejects Anderson's sufficiency of the evidence claim.

## III.    Certificate of Appealability

Rule 11(a) of the Rules Governing § 2254 Cases requires that the district court decide whether to issue a certificate of appealability (COA) when it "enters a final order adverse to the applicant." To obtain a certificate of appealability, a petitioner must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If the district court rejects the petitioner's claim on the merits, the court should issue a certificate of appealability only if the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). But "[w]hen the district court denies a habeas petition on procedural grounds without reaching the . . . underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* The Court finds Anderson clearly defaulted and thus the dismissal of his Section 2254

claims on procedural grounds is not debatable. Likewise, the Court's rejection of Anderson's sufficiency of the evidence claim and his ineffective assistance of counsel claim based on trial counsel's failure to call Brandi and Patricia Wheeler as alibi witnesses on the merits is not subject to debate. Accordingly, the Court declines to issue a COA for any of Anderson's claims.

## Conclusion

For the foregoing reasons, Anderson's Section 2254 petition for a writ of habeas corpus, R. 1, is denied. And the Court declines to issue a certificate of appealability for any of the claims in the petition.

ENTERED:

_Thomas M Durkin_

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: July 26, 2019